Judge Marshall
delivered the Opinion of the Court.
First. The deed offered in evidence by the defendant Borah, being evidently the same deed referred to by the complainants in their bill, as exhibit C, by which ^ ^ * they say their father, under whom they claim title, con-veyecl to-five hundred and sixty two acres of . , , . . . , . . ^ . the land conveyed'to him by Anderson — it seems to this Oourt, that the execution of said deed must be consid- . ered as admitted by the complainants, and that, although not sufficiently authenticated by the certificates endorsed upon it, it should have been received as evidence on the part of the defendants. But we are also of the opinion, that the defendants sustained no injury by the rejection of the deed; because upon a careful consideration of its terms — vague and uncertain as they are — we are inclined to the opinion, that it does not convey the whole of the grantor’s interest in the nine thousand acre patent, as contended for by the defendants ; but only one fourth of it, as contended for by the complainants, and this opinion is fortified by several extraneous circumstances connected with the title, claims and conduct of the several parties interested in the nine thousand acre patent, and of the grantee of the deed in question.
Second. The gross inequality and injustice of theca; parle division of 1828, taken in connection with the cir-eumstance that it was made at the instance of Carring-ton and Borah, and in a manner highly advantageous to their interest, before the three persons who made it had been appointed commissioners by the County Court, and without due examination by them, of the whole tract to be divided, and that the same three persons were, after , . . , . , ,. the appointment of themselves and others as commis *177 sioners selected by the applicants to perfect the proceeding, and reported substantially the same division, constitutes, in our opinion, such a case of fraud in obtaining the division, as comes within the proviso of the second section of the act of 1797, (Stat. Law, 1069,) and authorized the Chancellor, on the prayer of the Archers, whose rights were injuriously affected, and who were non-residents, and had no notice of the proceeding, to set it aside and cause an equitable division to be made; and the Circuit Court did not err in decreeing a re-division.
Where a tract of land is to be divi ded among co-ten nants, some of whomhavemade ¿rfWiprovementson kor have acqui shares of theland as it would be estimated without ‘l"3"1; and;if practicable, the shares allotted to sljould_m-elude their an-provements; if* them by pur-ase, the value the improve-ents should not t>9 included in estimate of dOne entire tract, made with a view to the division; the owners of those improvements should have their full that is not practicable, and the improvements,or anotte^mothem, allowance ought íheim made f°r
A decree for a di mong cítenfnts should apply to, and dispose of, the whole tract — leaving no surplus, or portion, which may become the subject of future litigation; and deeds, releases #c. perfecting the titles in severalty, should be directed and made; and, therefore, every party interested in the land, is a necessary party to a bill for partition.
Third. But the decree, as rendered, is erroneous m , . • i several particulars:
1. Improvements in which the defendant Bojah had .... the exclusive interest, were taken mto^Rfe determining the value of the land alio parties, and the land was divided acco: as enhanced by improvements made Borah. Borah and Carrington shouli quantity of six hundred and seventy average value to the average value of to be divided, without regard to the improvements of either party as an ingredient of that value. But the improvements should have been so far regarded as to be allotted, if practicable, to the party by whom they . , , . . J J were made or purchased. And for any improvements made by one party since the first division, and assigned . , , , ,. . . , , , to the other in the re-division, the party making them should be allowed a reasonable remuneration; but as to . ’ . , . other improvements, there seems to be no ground in this case for making any such allowance.
2. The division as made is incomplete; a part of the nine thousand acre tract patented to Anderson, remaining still undivided. If the present parties, or any of them, were entitled to the whole of this residuum, the failure to divide it would be inconsistent with the principle and practice of the Court, by leaving a part of the subject undisposed of, and open to future litigation, *178 ^ut as ^ere seem to other parties interested in the subject, the proceeding is liable to the still greater objection that, what has been intended and attempted to be done, is left incomplete: the title of the outstanding parties has not been released in the lands allowed by the decree to the parties liligant. And the objection is, that the outstanding parties have a right to participate in the division itself, and to see that their interests are regarded.
Without intending to determine conclusively, upon the present 'State of the record, who, besides the parties now before the Court, may be entitled, to portions of the land remaining to be divided, it is deemed proper to suggest, that the residuum above noticed, as remaining after the division which is now reversed, seems to be a part of the surplus quantity included in the patent of Anderson, beyond the nine thousand acres called for, •and all parties who have an unsatisfied interest in the surplus, are now entitled to come into the partition.
It seems that Anderson, the patentee, conveyed to Richard Archer (the ancestor of the complainants) and Mayo Carrington, respectively, one undivided fourth ■part, each, of the entire survey; which conveyance carried one fourth of the surplus to each; and Richard Archer, having conveyed one undivided fourth part of his portion to A. Maury, retained three fourths of one fourth of the entire tract; to which portion the complainants, as now appears, are entitled. While Mayo Carrington, having conveyed to A. Maury the specific quantity of fifteen hundred and seventy five acres, and to Clement Carrington, by separate deed, the specific quantity of six hundred and seventy five acres, making together two thousand two hundred and fifty acres, (the fourth of nine thousand acres,) seems to have retained his interest in the surplus, amounting to one fourth thereof; to which he, or his representatives, are still entitled.
After the conveyance to Archer and Carrington of one fourth each, Anderson, the patentee, retaining one' half of the entire tract, which included, of course, one *179 half of the surplus, conveyed to A." Maury five thousand-six hundred and twenty five acres of the same tract— a quantity greatly exceeding his half of the nine thousand acres, and which can only be made up by adding his interest in the surplus, and also one fourth of Archer’s interest in the entire tract, which fourth part was afterwards confirmed to Maury by Archer’s own deed above referred to as exhibit C. and which states the previous conveyance of the same fourth by Anderson, under the direction of Archer. Assuming the whole surplus to be one thousand acres, it is apparent that the precise quantity contained in the deed of Anderson to Archer, is made up by Anderson’s half of the entire tract, (which includes his half of the surplus,) together with one fourth of Archer’s fourth of the whole-tract, which includes one fourth of his portion of the-surplus.
As the surplus appears in fact to be about one thousand acres, and as Anderson seems to have had no right whatever to convey the quantity mentioned in his deed to Maury, except by including the surplus belonging to his own interest, and one fourth of that belonging to Archer’s interest, making nine sixteenths of the whole surplus, it may be assumed that he intended to convey his own interest in the surplus, and that he had no remaining interest in the tract. Maury,- having sold and conveyed seven thousand two hundred acres, which is the aggregate of the quantities conveyed to him by the deeds of Anderson and Archer and Mayo Carrington, and his vendees having many years since had an allotment of their interest in severalty, by an ex parte proceeding of their own, which is not now drawn in question, it may be assumed that the nine sixteenths of the surplus to which Maury was entitled under his deeds from Anderson and Archer, are included in that allotment. And it follows that, Mayo Carrington not having, as now appears, conveyed his fourth of the surplus, and Richard Archer having conveyed but one fourth of his fourth — no other persons but the said Mayo or his representatives (or others having i^ight under him,) and *180 the complainants now appear to be entitled to the remaining seven sixteenths of the surplus.
We do not perceive, therefore, in the present state °f the record, that any other new party is necessary for the purposes of the division now to be made, except Mayo Carrington, or such person as may be entitled to his interest independently of his deeds to A. Maury and Clement Carrington: under the last of which, Henry Carrington and Borah claim, by conveyance from Clement to Henry Carrington, and from him to Borah, of the specific quantity of six hundred and seventy five acres, which is all that can be held under this deed. But these suggestions are not intended to exclude the claims of any party who may assert an interest in the surplus.
It is, therefore, decreed and ordered that, for the errors above stated, the decree be reversed, and the cause remanded, with directions that the complainants be allowed to bring before the Court, all parties having title in so much of the nine thousand acres in the bill mentioned, and patented to R. C. Anderson, as remains, exclusive of the seven thousand two hundred acres heretofore allotted by commissioners appointed by the Butler County Court, to the vendees of Abraham Mau-ry, and that thereupon, a partition of said remainder be made between the parties entitled, according to their respective rights, and upon the principles of this opinion.