Term, 1860.]　　　Drennen ad., et al. vs. Walker et al.

## DRENNEN'S AD. ET AL. VS. WALKER ET AL.

The statute of limitations does not commence to run against a married woman, who was under such disability at the time the cause of action accrued; and upon a sale of her interest in property adversely held, it will run against her vendee only from the time of the conveyance.

In a proper case, this court would not hesitate to characterise it as unbecoming in a lawyer to speculate upon the ignorance of others, or upon his own professional knowledge, by purchasing stale or doubtful claims of those ignorant of their value, and so enriching himself without regard to the rights or merits of property holders; but the purchase of property in the adverse possession of another by a lawyer, is not champertous, though he can expect to gain the benefit of his purchase only by legal compulsion, if there is no question of professional relation or confidence between himself and the parties affected by the purchase.

Where a party entitled to a donation claim under the act of Congress, approved 24th May, 1828, died before the lands selected under the claim were patented, the title to the lands, by act of Congress of 20th May, 1836, vested in his heirs, etc., upon the issuance of the patent, as if it had issued during his life: and a purchaser of such claim, from the widow of the claimant, subsequent to the act of Congress, was affected with notice that such purchase could not invest him with title to the lands to be located with the claim: and having located the claim and held the land obtained by it, he must be held to have acted as the agent of the heirs of the claimant, and as holding in trust for them.

A purchase, *pendente lite*, by the defendant, of the interest of some of the complainants in the property in dispute, will not be disturbed by this court where there is no appeal by such complainants from the decree.

Under the Territorial law, a widow was not entitled to dower in lands selected, subsequent to the death of her husband, by virtue of a donation claim held by him in his life time.

Where a person purchases a donation claim from the widow of the claimant, taking from her a bond to make title to the lands to be located, and afterwards locates it in the names of the heirs of the claimant, and sues and recovers from the widow the purchase money, he thereby acknowledges himself to be the holder of the lands located, for the benefit of the heirs.

And if the heirs claim the benefit of such location of the donation claim and seek a partition of the land among themselves, it is a ratification of the act of location as being made by their agent, and they must take it as it was made, with all the expenses necessarily incurred in making it, such as the payment to settlers upon the land for their consent to the location being made, without which it could not

have been done; but it is necessary to allege that such expenditures were necessarily incurred and they must be proved as alleged.

A tenant in common has a right to make improvements without the consent and against the will of his co-tenants; and though he has no lien upon the lands for his improvements, he will be indemnified for them, whether made by himself or those claiming under him, by partition in equity so as to have the improvements allotted to him, or have compensation for them if thrown into the common mass.

*Appeal from Crawford Circuit Court in Chancery.*

Hon. FELIX I. BATSON, Circuit Judge.

PIKE & CUMMINS, for appellants.

The first question in this case is, what was the legal nature and character of Ross'₂claim? It was a right to select, by way of gratuity from the United States, 320 acres of land, of any unappropriated land in Arkansas. Did this right pass by a devise of personal estate, goods and chattels?

It is familiar law that a term for years, however long, descends, or passes by devise as personal estate, 7 *Scamm.* 119; *Id.* 124; 1 *N. Hamp.* 350.

The act granting the donation claim provides, it is true, that patent shall issue to the settler, *or to his, her or their heirs*, "for the lands so entered;" but it simply gives to the settler himself the right of entry, and makes no provision for any *entry* by any one under him, his heirs, representatives or assignee.

Of course, when he made the entry, the patent would issue to him: or if he died after entry, to his heirs. That the law settles. His title to the specific land commenced with the entry. That does not affect the question as to the nature of his claim previous to an entry.

Now it is evident that Ross at his death had no such real estate. He had not the least interest in or claim to this specific land. He had a right to select 320 acres somewhere, and that was all. That right was not worth, at the utmost, more than the government price of the land. It was not real estate, by its

nature nor under the statute. 3 *Scamm.* 216; 2 *Sand. Ch. Rep.* 89; 1 *Scamm* 314; 4 *Peters* 332.

We claim therefore that the donation claim and certificate were mere personal property, or at least not descendible realty, at Ross' death: If so, the claim passed to the administratrix, under the will, to be used by her for the education and support of the children. It passed as included in the term personal estate.

It is certain, in the first place, that, if these claimants will have the *benefit* of Drennen's location, they must treat him as their agent. Ratifying the location, and claiming the advantage of it, they must take it *cum onere:* they must ratify and abide by the contracts and agreements by which the location was obtained, and the title encumbered. *Story on Agency, sec.* 244, 250; 2 *Str.* 859; 4 *T. R.,* 211; 7 *East* 164.

And again, even if the claims held under the compromise with the settlers were to be entirely disregarded, and the whole property held subject to partition, the court would so divide it as not to give the complainants any of the improvements. 1 *Barb. S. C. R.* 507; *Story's Eq. sec.* 655; 3 *Paige* 546; 3 *Sand. Ch. R.* 68; 3 *Edw.* 323.

And, if they *can* claim to have the whole land divided, they are entitled only to their proportional or aliquot share *in quantity,* by acres, of the land, which they must take so as not to include any of the improvements.

And certainly this is peculiarly right, fit and proper as against Mr. Walker, who purchased his interest in the face of the open, notorious and long continued possession of Drennen, Henry and Scott. He can claim no consideration at the hands of the court. Purchasing a mere litigious right, he is not favored here. If his speculation fails, none will lament: but the court will rejoice that there are principles, well settled and well considered principles, of equity, on which they can refuse to give him an interest in the buildings and improvements of other men.

Fortunately, he is barred in equity. The land was entered in 1838. From that time to the filing of the bill Drennen had

open undisturbed possession, which connects with that of Henry and Scott, of Pickett, Gregg, McClelland and Maxwell.

FOWLER & STILLWELL, also for appellants.

Walker was clearly barred. The disabilities under which his co-complainants labored could not save his rights from the operation of the statute bar. 17 *Ark.* 650.

We think it clear that the right to locate the claim of John Ross passed to Rachel Ross by his will: but if not, still as administratrix she had the right to locate the claim, or sell and assign it; and by her assignment it passed to Drennen, and he became entitled to locate it, and in doing so to use her name or the names of the heirs at law, and thereby became invested with the dry legal title, upon which they could not even maintain an action of ejectment against him or his grantees. 18 *Ark.* 490: and certainly a court of equity will not afford them any relief.

The complainants cannot ratify and reap the benefits as to a part and repudiate as to the balance. If they adopt the act of Drennen as to the location, they must also ratify his acts in the expenditures necessary to effect the location. *Story on Agency* sec. 250.

Courts of equity will not only decree a partition, but also compensation to one of the parties for equality of partition, so as to prevent injustice or any inequality of partition. 1 *Story on Eq. Jur.* 609; 2 *Vesey, jr.* 570. If improvements have been made by one tenant in common, they will allow him compensation, or the part of the land on which his improvements have been erected will be assigned to him. 2 *Kinn. L. Comp.* 295; 3 *Bibb* 510; 7 *J. J. Marsh.* 141; 2 *Marsh.* 584; 7 *Dana* 177; 6 *B. Mon.* 208.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

Under an act of Congress, approved 24th May, 1828, John Ross, by virtue of having had a settlement in the country ceded by the United States to the Cherokees, and of having been

obliged to remove therefrom, on account of the cession, was entitled to enter any two quarter sections of land, the sale of which was authorized by law, unless there might be an improvement of an actual settler upon the lands; in which case, no entry of such lands could be made, without the written consent of the settler, before the lands should be offered for sale.

The entry was to be made without any price paid, the consideration for the lands being the abandonment of the settlement in the ceded country, made necessary by the treaty between the United States and the Cherokee Nation, ratified the 23d of May, 1828.

But with the character of these donation claims, and with the construction put upon them by this court, and with the questions growing out of their proof and assignment, the legal profession of this State must be familiar, from the cases in which such claims have been before the court. See *Logan vs. Moulder*, 1 *Ark.* 319; *Gaster vs. Ashley, Ib* 329; *Nicks vs. Rector*, 4 *Ark.* 279; *Mays vs. Johnson, Ib.* 613; *Finley vs. Woodruff*, 3 *Eng.* 339; *Johnson vs. Mays, Ib.* 386; *Barnard vs. Ashley*, 18 *How.* 48; *Witherspoon vs. Duncan*, 21 *Ark.*

The claim of Ross was proven and allowed by the land officers, as prescribed in the act of Congress, and was ready for location in his lifetime, but at his death it still remained in his possession unlocated, and no disposition was made of it in his last will, unless, as contended by the appellants, it passed under the denomination of goods and chattels, to his widow, Rachel Ross. That description of property was given to her by will, to be used as might be necessary for the support of the family and education of the children, of whom there were eight, three older ones, however, being married daughters.

The bill charges, that shortly after the death of Ross, his donation claim was located upon the south-west quarter of section twenty-four, and the north-east fractional quarter of section twenty-three, in township nine, north of range thirty-two west, in Crawford county; that a patent was issued for said

544 CASES IN THE SUPREME COURT

Drennen ad., et al. vs. Walker et al. [OCTOBER

lands, which was in the possession of John Drennen, one of the defendants.

The bill is exhibited by David Walker, who claims the interest of Thurza Alexander, a daughter of John Ross, by its purchase from her and her husband, Samuel Alexander, by James Rowland and Eliza his wife, by William Black and Chenee his wife, by Robert Reeves and Mahaly his wife, the said Eliza, Chenee, and Mahaly being daughters of John Ross; by John Couch, the husband surviving Ann Couch, his wife, another daughter of Ross, and by her seven children, and the husband of one of them; and by Benoni Ross, an infant son of John Ross, against Rachel Ross, the widow of John Ross, Miranda Couch, a daughter of the same and widow of George Couch, Peter Ross, a son of John Ross, John Drennen and others, who are represented as holding parts of the quarter sections of land above described, under Drennen.

And the object of the bill is to have the lands so located with the donation claim of John Ross, and that were patented thereon, decreed to be the lands of the heirs of John Ross, and of those who have succeeded to their rights, and to have them partitioned or sold, and the proceeds divided in accordance therewith.

Aside from the various defences interposed by Drennen, and those claiming under him, tending to defeat the suit entirely, and to claim the benefit of large expenses made by Drennen, to secure the location upon the located lands, and of improvements put upon the lands by Mussett, Henry and Scott, it appears that before the institution of the suit, he, Drennen, had acquired the right of Perry Ross, a son, and one of the eight heirs of John Ross and a defendant to the bill; and that while the suit was pending, he purchased two of the interests demanded in the bill, those of James Rowland, and of Eliza, his wife, and of William Black and Chenee, his wife.

The court below, therefore, in maintaining the claims set forth in the bill, awarded to Drennen's representatives, he having died before final decree, three-eighths of the two quarter

sections of land, but disallowed his claim to remuneration for expenses incurred in making the location, and the claims of Henry, and Scott and wife, for improvements, by either awarding compensation for them, or by directing the partition to be so made as to set off the land and improvements to Drennen's representatives, or to them and Henry and Scott and wife.

The court directed partition to be made as follows:

Three-eighths to Drennen's heirs and widow.

One-eighth to the husband and children of Ann Couch, deceased.

One-eighth to Miranda Couch.

One-eighth to Robert Reeves and Mahaly his wife, in right of the wife.

One-eighth to Benoni Ross.

And one-eighth to David Walker, as succeeding to the right of Thurza Alexander, wife of Samuel Alexander, as by purchase from them; all subject to the dower right of Rachel Ross in the two quarter sections of land.

The defendants, Catharine Drennen, as administratrix of John Drennen, John Henry, and Charles G. Scott, appealed.

Besides the objections that are made to the decree, that affect the interests of all the heirs of John Ross, it is urged specially against Walker's claim, that it is barred by the statute of limitations, and that it is speculative and champertous. This claim is the interest of Thurza Alexander, the oldest daughter of John Ross. She was the wife of Samuel Alexander at the death of Ross, as shown by the will of Ross, made 18th of May, 1830, in which she is described as Thurza Alexander, as admitted by the answer of John Drennen, as implied by the deposition of Peter Couch, and as found by the court below.

On the 10th of April, 1848, the date of the deed from Samuel Alexander and his wife to Walker, the same Thurza Alexander was living under the disability that had attached to her from the time of her marriage, before the will of her father was made. The statute of limitations then never began to run against her.

It began to run against Walker from the date of his convey-ance from Alexander and wife, but from that time until the beginning of this suit, the 28th of November, 1850, it had not been running long enough to bar such demand as the deed to Walker authorized him to make.

The objections made to Walker's purchase, because it has resulted in a suit promoted by him, because he was a lawyer, and his vendors were not in possession of what they sold, and Drennen was in adverse possession, hardly need to be answered as our statute allows a person to sell and convey his interest in real estate, though it be in the adverse possession of another. And if it were a material fact, which it is not, that Walker expected to gain the benefit of his purchase, only by the com-pulsion of legal process, there is no evidence of such expecta-tion on the part of Walker. And we do not know of any law to prevent an attorney from buying such claim to real estate as he may choose to buy, where there is no question of profes-sional relation or confidence between himself and the parties affected by the purchase, although, in a proper case, we would not hesitate to characterize as unbecoming in a law-yer, to speculate upon the ignorance of others, or upon his own professional knowledge, so as to buy up stale or doubt-ful claims, or such as the parties selling might not know the value of, and for the purpose of enriching himself without regard to the rights, or the merits of the holders of the pro-perty.

In this case no suit was pending; whether any was in con-templation, we are not informed. The purchase, then, was not a champertous contract.

And Walker being a lawyer, and if aware of the facts of the case, as charged by Drennen's answer, might have considered the rights of the heirs of John Ross and of Drennen to be as they were declared by the court below, and might have expect-ed to obtain, without suit, such avails of his purchase as he might suppose would be commended to Drennen's sense of jus-

tice, or as would accrue from his receiving and being governed by sound legal advise

Walker, then, stands upon equal footing with the other plaintiffs; and they all have a right to sue for the lands mentioned in the bill, and to receive their portion of them, if their rights thereto be good, unaffected by limitations or lapse of time.

The bill presents an apparently good case for the rights of the heirs, and assignees of the heirs of John Ross, to the lands in question: yet from its meagre statement of facts, that would seem subject to some sort of explanation, we naturally refer to the answers to ascertain why it was, that the patent issued upon the donation claim of John Ross, should be in the hands of John Drennen, and why the lands located and patented should be held and enjoyed by Drennen and his representatives. And upon this point, the joint answer of Rachel and Perry Ross, and the answer of John Drennen, and its accompanying documents, afford full information.

From these we learn that David Thompson, and the defendant, John Drennen, in 1835, in Crawford county, were engaged together in trade, as merchants, and that they extended their partnership business to the purchase of such donation claims as that of John Ross, of which many were in market, as averred by John Drennen; that the claims so bought were located by Thompson for the benefit of the firm, upon such valuable lands as he might select.

The answers of Mrs. Ross and Drennen agree in alleging that, on the 13th of April, 1835, at the house of Mrs. Ross, in Crawford county, Drennen consummated with Mrs. Ross a contract for the purchase of her husband's donation claim, for three hundred dollars paid to her; and that Drennen then took a bond from her, as executrix of the will of John Ross, and as his heir, in which she bound herself to make an absolute title to such lands as should be located with the claim, whenever a patent should be issued for the lands. She, also, at the same time, executed a power of attorney, authorizing Thompson, or his substitute, to locate the claim wherever he pleased.

Mrs. Ross was an illiterate woman, as she avers, and as is shown by the execution of the instruments by her mark. Drennen was well acquainted with her, with the fact of her husband having left eight children; the deed and letter of attorney were executed at the house of Mrs. Ross, and, apparently, without the advice of any disinterested person, and we cannot doubt that Drennen procured the instruments to be drawn up, and executed by Mrs. Ross, as executrix, and as heir of her husband, knowing that Mrs. Ross was not the heir of her husband, and that she was not the person to whom John Ross committed the administration of his estate, she having taken out letters of administration, annexed to the will, upon the refusal of the appointed executor to qualify and execute the trust.

Drennen also knew that Mrs. Ross could not confer any title to the lands to be covered by the donation claim, as, when he came to locate it upon the lands in controversy, he presented an application therefor, signed by himself with the names of the children and heirs of John Ross, and at the same time told Samuel Alexander, the husband of one of the heirs, and the person who was appointed executor in the will, and whom he looked upon as the adviser of the family, that he should have to derive his title to the lands he was then locating, from the children and heirs of John Ross.

This application was made the 28th of September, 1837, but the entry was not perfected till 1838, and Drennen is chargeable with knowledge of the act of Congress, approved 20th of May, 1836, which provided that where patents for lands should be issued to a person who had died before, the title to the lands should be vested in the heirs, devisees or assignees of the deceased patentee, as if the patent had issued to him during his life. *Land Laws, part I, chap.* 489, *p.* 540.

Drennen then obtained the donation claim, knowing that his payment for it to Mrs. Ross could not invest him with any title to the lands he might locate with the claim, and he therefore secured himself by the bond of Mrs. Ross, in the penalty of

two thousand dollars, by which she could only be relieved from refunding the amount paid to her, with interest, by procuring, by favor or accident, that to be done, which she had no power to accomplish.

A reference to the act of Congress, above cited, is a sufficient answer to the arguments, made here for the appellants, that Mrs. Ross had a right to sell the donation claim, as she did, to Thompson, or to Drennen.

And if any more pertinent or personal reason should be desired to overthrow any inference favorable upon this head to Drennen, the record amply affords it, in the agreed statement of facts, in showing that the bond of Mrs. Ross was to be satisfied only by the execution of a deed to Drennen of the lands located by the heirs of John Ross.

But without reference to the law of the case, the disavowal by Drennen of his contract with Mrs. Ross, which was complete by his suit upon the bond, and by his recovery of the amount he had paid to her for the donation claim, with interest, and by his obtaining satisfaction in full of the judgment, all of which stand admitted on the record, and with like effect as if properly set out in the pleadings, estops him and his representatives from claiming any benefit on the alleged purchase of the donation claim from Mrs. Ross, or from his payment to her of three hundred dollars.

The purchase he has denied to be effectual in law; the money paid he has acknowledged to have reclaimed, with interest.

Then, in the location of the donation claim, and in holding the lands obtained by it, Drennen must be held to have acted as an agent for the heirs of John Ross; and, except as to his own interest in the lands, was accountable to the heirs whose interest had not been transferred, and to Walker, the assignee of one of them, to make title to them of their respective portions, or as holding the title in trust for them.

As to the three-eighths awarded to the representatives of Drennen, although two of the shares were acquired from the plaintiffs, and during the pendency of the suit, as there is no

appeal by any of the plaintiffs, we shall not disturb the decree of the court below in this respect, and shall hold that Drennen was tenant in common, and to the extent of three-eighths, with the others that were held by the court below to be entitled to the lands.

And this interest of Drennen's must also be held free from any dower claim of Mrs. Ross. For such claim must be determined according to the law in force at the time of her husband's death. And her husband, when he died, had no such seizin or possession of the lands in controversy, by virtue of a deed, patent, entry, warrant, or survey, or otherwise, as to entitle her to dower. *Steele & McCampbell's Dig.* 210. And the act of Congress before cited, so far as it may affect this question, vests the title carried by the patent issued after the death of the patentee, in the heirs alone.

With this modification of the decree, we are content that it should stand as declaratory of the interests of the respective persons entitled to the lands located by Drennen with the donation claim of John Ross.

Yet this affirmance is but an abstract declaration of the law, as being coincident with its administration by the court below, until the more important questions growing out of Drennen's expenditures in procuring the location upon the lands in controversy, and out of the improvements of Mussett and Scott and of Henry, are resolved and the interests of the parties, as thereby affected, are determined.

The cross bill of Mrs. Ross being quashed, upon demurrer, and no complaint thereof being made, it forms no part of the record.

And the view which has been taken of Drennen's conduct, in suing Mrs. Ross on her bond to make title to the lands patented upon the donation claim, and in recovering from her the amount of the purchase money paid for it, with damages, makes it unnecessary to notice other points raised by counsel for the appellants, and particularly those touching the want of acknowledgment of the two Couch women to the deed of 23d

July, 1842, and of Tebbetts' testimony showing their separate acknowledgment before him as a justice of the peace, and of his omission to make the indorsement thereof upon the deed— touching the alleged minority of Benoni Ross and Mahaly Ross, now Mahaly Reeves, and touching the kind of interest, or estate, that the donation claim represented when bought by Drennen of Mrs. Ross.

Drennen, in his answer, correctly stated the law, that the donation claim of Ross could not have been located on the lands that were selected, without the consent of such persons as were settled on the lands.   And he averred that Tyree Mussett had a right of pre-emption to the south-west quarter of section twenty-four, and that David McClelland also lived on the same quarter section, and that Joseph W. Spivey was a settler, and had an improvement upon the north-east quarter of section twenty-three, which would have soon ripened into a pre-emption right, had he continued his residence thereupon; and that, to secure the location upon the two quarter sections named, it was necessary for him to procure the consent of Mussett, McClelland and Spivey; that, to obtain the consent of Mussett, he agreed to convey to him the east half of the south-west quarter of section twenty-four, which included his improvements, which he avers that he did, and proved it by Mussett, though the deed is not brought upon the record of the case.   That he made an agreement with McClelland and Spivey for their consent to the location, and obtained their verbal consent thereto, which was retracted by them upon a misunderstanding of the terms of the agreement, which was not in writing, but that, upon the first of January, 1858, he obtained their consent to the locations, and their withdrawal of their protests against the same, which was in writing, and is exhibited with his answer; for which last consent of McClelland and Spivey he paid the latter six hundred dollars in cash, and agreed to convey to McClelland ten acres of the south-west quarter of section twenty-four, including his improvements; which agreement was perfected on the 25th of June, 1840, by

a conveyance of the ten acres to McClelland, John C. Picket, and John Gregg.

The answer of Drennen also states that Mussett afterwards desired to sell his eighty acres, the east half of section twenty-four, and upon the 30th of September, 1843, conveyed to Drennen the same, for the consideration of three thousand dollars paid to Mussett by Drennen.

Drennen therefore claims that if partition of the two quarter sections was to be made, the court below ought to have allowed him, againt the other claimants, to the extent of their interests, for the three thousand dollars paid to Mussett, for the ten acres that was the subject of compromise between him and McClelland to obtain the consent of the latter to the location, for the six hundred dollars paid to Spivey, and for the three hundred dollars paid by him to Mrs. Ross, as the price of the donation claim.

And Henry, another defendant, who holds under Drennen in severalty about two acres of the south-west quarter of section twenty-four, claims to be reimbursed for his improvements to an amount equal to their cost, about seven thousand dollars, or to their cash value, when they were the subject of testimony, which was about five thousand dollars; while Charles G. Scott & wife, who hold twenty acres of the eighty that were deeded to Mussett and by him reconveyed to Drennen, under a deed of gift from Dennen to his daughter, Mrs. Scott, wish to have Mussett's improvements worth three thousand dollars, and the improvements that they have added thereto, to the value of nineteen hundred dollars, allowed to them, should these premises be included in the partition sought for by the appellees.

And Drennen also claims that if the sale by Mrs. Ross of the donation claim was not good to conclude the heirs of John Ross, it was effectual to pass the dower interest of Mrs. Ross. Or, as an alternative mode of defence, Drennen and the defendants interested in the improvements, ask that, upon partition, Drennen's share should be so laid off as to include the improve-

ments of Henry, and Scott and wife, and without their being brought into the account of the value of the patented lands.

The claim that Mrs. Ross passed her dower interest, if nothing else, by her sale to Drennen, was disposed of, when we decided in favor of Drennen, that his portion of the lands are to be held free from any dower incumbrance of Mrs. Ross.

Yet were it not so, this claim and another one pressed in Drennen's answer, that of having refunded to him the three hundred dollars paid to Mrs. Ross for the donation claim, could not be allowed, because Drennen, by his proceeding upon the bond of Mrs. Ross, had precluded himself from having any benefit of the purchase, or of any thing afterwards done towards its confirmation.

Drennen bought the donation claim of Mrs. Ross, he located it upon an application signed with the names of the children and heirs of John Ross, upon which a patent could only issue, as it did, to the heirs of Ross. When the patent issued, the estate in the lands vested in the heirs, the same as if the lands had been located by and patented to John Ross in his life time, and had upon his death descended to his heirs. If Drennen had obtained a valid deed from the heirs, the lands would have been his, but not succeeding in this, he chose to consider his purchase from Mrs. Ross invalid, and indemnified himself for the money paid to her for the donation claim, by a recourse to the bond, which he exacted from her, to give him a good title to the lands to be located.

By that act, whatever might have been his intention before, he acknowledged himself to be the holder of the located lands, for the benefit of the heirs of John Ross; and he was purely their agent, till for an additional consideration and by a new contract with Perry Ross, he became a tenant in common with the other heirs, entitled to an undivided eighth part of the lands.

But if subject to the responsibilities of an agent, he must also have the rights of one.

By this suit the plaintiffs are ratifying the location of Drennen their agent: they are claiming the benefit of it by wishing

35

**554**                CASES IN THE SUPREME COURT.

Drennen ad., et al. vs. Walker et al.                [October]

to have it partitioned among themselves and others; and they ought to take the location as Drennen made it, with the burdens that he had to carry, with the expenses that he necessarily incurred in securing the location, and whether Drennen had the authority to bind the Ross heirs by incurring for them such expenses as he did incur, or whether the location might not have been made with less expense, are not questions now to be decided. The plaintiffs ask for the benefit of the location, and if they have it, they ought to take it as it was made; not as it might have been, or ought to have been made.

" When an agent, without competent authority, makes a contract, a subsequent ratification by the principal relates back to the time when the agent acted. The ratification is equivalent to an original authority; it is considered in law as furnishing proof of an authority in the agent at the time he assumed to have it;" *per Marcy, Judge, in Maclin vs. Frith,* 6 *Wend.* 112.

" If you adopt De Beaume as your agent in your own behalf, you must adopt him throughout and take his agency *cum onere*"— *Lord Ellenborough, in Howell vs. Pack,* 7 *East.* 164.

But it is of course necessary for Drennen to have made proof of his expenditures, to be allowed them, and the examination of the evidence to support the compromises made with McClelland and Spivey, and the allegation of three thousand dollars paid to Mussett, may be our next step in the case.

Drennen alleges that Spivey was a settler upon the northeast quarter of section twenty-three, that he could procure his consent to the location only by paying him six hundred dollars, which he accordingly did.

Spivey proves the payment of the money to him as alleged by Drennen, but he does not prove that he was a settler upon the quarter section described. The description of his location does not support the allegation. He deposes as follows: " I held as I supposed, a pre-emption right in 1838, to what I then considered, and now consider the north-east quarter of section twenty-three, town nine north, range thirty-two west."

Now, what Spivey considered to be the north-east quarter of

section twenty-three, may be so, or may not be so, but the fact alleged is clearly not proven by him, unless the grounds of his consideration were shown to be good by his acquaintance with the land.    And where the matter to be proven is the identity of a piece of land, and the means of establishing it depend upon the notorious marks and lines of the public surveys, the conjecture of no person ought to be taken as evidence of the fact.    And Tyree Mussett, the only other witness, who testifies to Spivey's locality, says that he lived on the west half of the south-west quarter of section twenty-four.

It then is not proven, that it was necessary to obtain the consent of Spivey to locate the north-east quarter of section twenty-three, or what is more material, the allegation in the answer, that he had a settlement on the quarter section, is not sustained.

And there are difficulties in upholding the averments as to the eighty acres, and the ten acres in the south-west quarter of section twenty-four, alleged to have been conveyed to obtain the consent of Mussett and McClelland to the location. For the only proof of the allegation that ten acres were conveyed to McClelland, Pickett and Gregg, as a compromise with McClelland, is to be found in Mussett's deposition, in which he says that Drennen, to satisfy the claim of McClelland, gave to him a deed of ten acres of land.

This does not show the land to be of the south-west quarter of section twenty-four, and is variant from the answer and exhibit in the want of mention of two of the grantees of the deed.

And Mussett's testimony as to his own interest, is entirely different from the statement of it in the answer, so far as relates to its transfer from himself to Drennen, for the answer only claims three thousand dollars to have been paid to Mussett for the eighty acres that Drennen is said to have deeded to him, to obtain his consent to the location, while Mussett's deposition, as positively as testimony can, shows six thousand dollars to have been paid to him for the eighty acres—three

thousand for the improvements and buildings, and an acre of land, and three thousand dollars more for his claim to the residue of the eighty acres.

Probably the amount paid by Drennen to Mussett in 1843, would not be important as that was not the price of Mussett's consent to the location. It was for eighty acres of land, the ·east half of the south-west quarter of section twenty-four, that Mussett, the first of January, 1838, gave his second written consent to Drennen's location of that quarter section, and whether that was then worth three or six thousand dollars, or some other sum, nothing in the case gives us any information. Yet, if the claim for three thousand dollars was made upon the supposition that the purchase of Mussett's eighty acres in 1843, was the measure of its value in 1838, the case proven is better than the one alleged. Though it may be inferred that the claim rests upon the ground, that the whole south-west quarter of section twenty-four is not liable to partition, but upon allowance of what Drennen paid for it as a purchase, as if the payment had been made to secure its location.

Notwithstanding these difficulties, if the case had to be decided upon these incidents to the location, we might be able to render a decree satisfactory to us, or the case could be remanded for further proof.

But connected with this question of expenses, is the condition of that part of the south-west quarter of section twenty-four, as affected by the improvements of Henry, and Scott and wife, and the two may well be considered together in determining how the partition should be made between the parties entitled to the land.

These improvements were shown by the testimony to be worth, at the time the depositions were given, eight or ten thousand dollars. And for the purposes of this suit they will be held to have been made by Drennen, having in fact been made by persons holding under him.

Drennen, from 22d August, 1842, was a tenant in common with the heirs of John Ross, except Perry Ross, and at the time

of the decree of the Circuit Court, held jointly with the plaintiff Walker, and the four heirs of Ross, who had not transferred their interest.

Then, improvements having been made of the value indicated, at the time of the decree, by Drennen, they were properly made by Drennen, although without the assent of his *co-tenants*, and without any promise by them to contribute to their payment. And although they do not constitute a lien upon the estate, yet the court below, in decreeing a partition, should have taken them into consideration by granting compensation for them, or by awarding to Drennen that part of the southwest quarter of section twenty-four, on which the improvements were. 1 *Story Eq. sec.* 655, 656, *b.; Green vs. Putnam,* 1 *Barb. Sup. C. R.* 507; *Borah vs. Archer,* 7 *Dana* 177; *Respass vs. Breckinridge,* 2 *A. K. M.* 587.

Ordinarily, correlative to the question of improvements is that of rents and profits, though in this case, for the rents and profits resulting from the improvements of Drennen, the other parties in interest might have no claim. *Nelson vs. Clay,* 7 *J. J. M.* 140; *St Felix vs. Rankin,* 3 *Edw. R.* 324.

A tenant in common having a right to improve the land, without the consent and against the will of his co-tenant, but having no lien upon it for his improvements, can only be indemnified therefor by partition in equity so as to have the improvements a'lowed to him, or to have compensation for them if thrown into the common mass.

Such is his attitude as a plaintiff, and as a defendant it cannot be worse, unless it can be shown to be equitable, that his co-tenants shall be profited by his expenditures.

Notwithstanding the unfavorable attitude which Drennen occupied in this case, by virtue of his dealings with Mrs. Ross, in the purchase of the donation claim, and with the heirs, in attempting to procure its confirmation, and in claiming the three hundred dollars once received back by him, he is entitled to his equitable rights, when called upon to make partition of the lands among the heirs of John Ross. And according to the

well settled rules of equity, on partition he was entitled to have the benefit of his improvements in compensation, or in having the improved premises assigned to him.

Proceeding to modify the decree of the court below, let it be entered as the decree of this court, that the two quarter sections of land in controversy are to be allowed to the several parties as declared by the Circuit Court of Crawford county sitting in Chancery, saving that the three-eighths part of John Drennen's heirs and representatives are to be free from any claim of dower of Rachel Ross, and that they are to receive, as of their portion, the east half of the south west quarter of section twenty-four of township nine north of range thirty-two west, and if the value of that, and the two acres on which is the residence of Henry, exclusive of the improvements, be more than their portion allotted to them, that they make the excess good by payment thereof into court, for the benefit of the parties in interest; and if they shall still be entitled to more, that they receive it in money from the proceeds of the sale of the residue of the lands, if there shall be one, or by contributions from the other parties in interest—and that the north-east quarter of section twenty-three and the remaining part of the south-west quarter of section twenty-four, townsnip 9 north, range 32 west, be assigned to the parties representing the remaining five-eighths parts of the interest in the lands, as provided for in the decree of the Circuit Court of Crawford county sitting in Chancery, whose decree herein rendered, as modified is so far reversed, and is otherwise affirmed.

This mode of disposing of the questions at issue between the parties, we think to be eminently equitable, and conformable to the authorities. 1 *Story's Eq. sec.* 657; *Green vs. Putman,* 1 *Barb. S. C. R.* 509; *Haywood vs. Johnson,* 4 *ib.* 229; *Hart vs. Hawkins,* 3 *Bibb* 508; *Sneed vs. Atherton,* 6 *Dana* 281.

And this decree is to be remanded to the court below, that it may be carried into effect, in the assignment, as directed, to Drennen's heirs and representatives, and in the division, or sale

for division of the proceeds of the residue of the lands to those entitled thereto, as declared by the decree appealed from.

The costs in this court are to equally divided between the appellant and the appellees.